UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

     - v. -                                       :

DAVID B. CHALMERS, JR.,                           :       S5 05 Cr. 59 (DC)
OSCAR S. WYATT, JR.,
JOHN IRVING,                                      :
LUDMIL DIONISSIEV,
CATALINA del SOCORRO MIGUEL FUENTES,              :
    a/k/a "Cathy Miguel,"
MOHAMMED SAIDJI,                                  :
BAYOIL (USA), INC.,
BAYOIL SUPPLY & TRADING LIMITED,                  :
NAFTA PETROLEUM COMPANY LIMITED,
MEDNAFTA TRADING COMPANY LIMITED, and :
SARENCO, S.A.,
                                                  :
               Defendants.
                                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND TO ALLOW PROSPECTIVE FILING OF SEALED DOCUMENTS

**MICHAEL J. GARCIA**
**United States Attorney**
**Southern District of New York**


**Edward C. O'Callaghan**
**Stephen A. Miller**
**Michael E. Farbiarz**
  – Of Counsel –

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

1.  The Court Should Issue a Protective Order Pursuant to Section 3 of CIPA
    Precluding Wyatt from Publicly Disclosing Classified Material in Court Proceedings
    and Pursuant to Rule 57, Local Criminal Rule 23.1, and this Court's General
    Supervisory Powers Precluding Wyatt from Publicly Disclosing Classified
    Material Outside of Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.  The Court Should Adopt a Protective Order that Precludes Disclosure of
    Classified Discovery to the Defendants Absent Consultation with the
    Government or Pursuant to a Court Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3.  Wyatt's Objections to the Language of the Additional Provisions of the
    Protective Order are Unfounded and Easily Addressed . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

*Cases*:

*Esquire Radio & Electrics, Inc.* v. *Montgomery*
   *Ward & Co.*, 804 F.2d 787 (2d Cir.1986) ............................................................ 10

*United States* v. *Bin Laden*,
   2001 WL. 66393 (S.D.N.Y. 2001) ................................................. 4, 14, 15, 16, 17

*United States* v. *Gotti*,
   04 Cr. 690 (SAS) .................................................................................................. 7, 8

*United States* v. *Libby*,
   420 F. Supp. 2d 18 (D.D.C. 2006) .................................................................. 13, 14

*United States* v. *Moussaoui*,
   2002 WL. 1987964 (E.D.Va. Aug. 23, 2002) .............................................. 14, 17

*United States* v. *Marchetti*,
   466 F.2d 1309 (4th Cir. 1972) ............................................................................. 10

*United States* v. *Pappas*,
   94 F.3d 795 (2d Cir. 1996) ................................................................ 3, 4, 9, 12, 13

*United States* v. *Poindexter*,
   725 F. Supp. 13 (D.D.C. 1989) ............................................................................. 4

*United States* v. *Poindexter*,
   727 F. Supp. 1470 (D.D.C. 1989) ....................................................................... 14

*United States* v. *Rezaq*,
   156 F.R.D. 514 (D.D.C. 1994) ............................................................................ 16

*United States* v. *Smith*,
   780 F.2d 1102 (4th Cir. 1985) ............................................................................. 16

*United States* v. *Snepp*,
   444 U.S. 507 (1980) ............................................................................................. 10

*United States* v. *Yunis*,
   867 F.2d 617 (D.D.C. 1989) ................................................................................ 16

*Rules And Other Authorities*:

Fed. R. Crim. P. 57 ............................................................................................................ *passim*

Local Criminal Rule 23.1 ................................................................................................... *passim*

S. Rep. No. 96-823 (1980), *reprinted in*
    1980 U.S.C.C.A.N. 4294 ...................................................................................................... 4, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

    - v. -                                            :

DAVID B. CHALMERS, JR.,                            :    S5 05 Cr. 59 (DC)
OSCAR S. WYATT, JR.,
JOHN IRVING,                                      :
LUDMIL DIONISSIEV,
CATALINA del SOCORRO MIGUEL FUENTES,              :
    a/k/a "Cathy Miguel,"
MOHAMMED SAIDJI,                                  :
BAYOIL (USA), INC.,
BAYOIL SUPPLY & TRADING LIMITED,                  :
NAFTA PETROLEUM COMPANY LIMITED,
MEDNAFTA TRADING COMPANY LIMITED, and :
SARENCO, S.A.,
                                                  :
               Defendants.
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND TO ALLOW PROSPECTIVE FILING OF SEALED DOCUMENTS

       The Government respectfully submits this reply memorandum of law in further

support of its Motion for a Protective Order Pursuant to Section 3 of the Classified Information

Procedures Act ("CIPA"), which seeks an order that will govern the handling of classified

information in this case.  Based on the arguments below, the Government respectfully submits

that Wyatt's objections to certain provisions of the proposed protective order are unfounded.  No

part of the protective order, as proposed by the Government, will prejudice his defense or violate

his constitutional rights.  In addition, as supported by the caselaw cited below, the national

security concern of protecting against disclosure of classified information outweighs any colorable claim of prejudice that Wyatt could assert. For those reasons, the Government urges the Court to adopt the protective order as drafted, which will allow the parties to effectively litigate all issues involving classified information in an orderly fashion, while protecting against disclosure of classified information.

While recognizing the Court's authority to issue protective orders pursuant to CIPA, Federal Rules of Criminal Procedure 16(d) and 57, and the Court's inherent supervisory powers, Wyatt argues that the proposed protective order is unduly burdensome and coercive, and violates several of his constitutional rights, including his First Amendment free speech rights and his Fifth and Sixth Amendment rights to counsel. (Def. Br. at 2-3). Wyatt's two main complaints regarding the proposed terms of the protective order are: 1) the proposed provision that restricts Wyatt's disclosure of classified information that may have come into his possession outside of the classified discovery process in this case, and 2) the proposed provision that restricts Wyatt's counsel from disclosing to Wyatt the classified discovery that is provided by the Government to cleared defense counsel pursuant to CIPA. (Def. Br. at 4).[1]

---

[1] Wyatt also invokes the parties' unblemished record of compliance with the general parameters of the handling of classified information in this case to discourage the Court from finding that entry of a protective order is necessary at all. (*See* Def. Br. at 4 "should the Court determine that despite the parties' previous unblemished record of complying with the Court's CIPA security procedures they need to be memorialized in a coercive protective order Defendant Wyatt does not object.") In response to this suggestion, the Government notes that the language of Section 3 provides that upon motion by the Government the Court "shall enter" a protective order establishing procedures for the handling of classified information in a criminal proceeding. A protective order pursuant to Section 3, therefore, is mandatory once sought by the Government, regardless of prior conduct by the parties.

1.    **The Court Should Issue a Protective Order Pursuant to Section 3 of CIPA Precluding Wyatt from Publicly Disclosing Classified Material in Court Proceedings and Pursuant to Rule 57, Local Criminal Rule 23.1, and this Court's General Supervisory Powers Precluding Wyatt from Publicly Disclosing Classified Material Outside of Court Proceedings**

Wyatt's first objection relates to the Government's proposed protective order provision that would regulate Wyatt's use of classified information that may have come into his possession outside of the classified discovery process in this case. (Protective Order at 1, 11; Def. Br. at 4). Citing *United States v. Pappas*, 94 F. 3d 795, 800 (2d Cir. 1996), Wyatt argues that the Government's attempt to restrict Wyatt from disclosing such classified information goes beyond the allowable CIPA protections (Def. Br. at 5). According to Wyatt, the language that the Government proposes would not only regulate Wyatt's ability to disclose such information during court proceedings in the case, but would work as a prior restraint upon Wyatt's ability to disclose such information publicly outside the parameters of this case. (Id.). Wyatt argues that the specific statutory language of Section 3, and the legislative history discussing the purposes for adoption of CIPA, limit the scope of protective orders to material provided to the defense during classified discovery. (Id.). Wyatt argues, therefore, that while CIPA authorizes the Court to issue a protective order that regulates the manner in which such classified information can be used in criminal proceedings, there is no such authorization to regulate his dissemination of such classified information to the public, and that the Court should not exercise any other authority to issue such a protective order in this case. (Def. Br. at 5-6). Wyatt urges this Court to limit the language of its protective order such that such public dissemination is not curtailed, despite the fact that there is no suggestion in Wyatt's papers of any need or authorization to publicly disclose classified material.

-3-

The Government submits that the Court should exercise its authority under CIPA to issue a protective order governing Wyatt's use during court proceedings of classified material obtained outside discovery, and that the Court should exercise its authority under Rule 57, Local Rule 23.1, and/or the Court's inherent supervisory powers to restrict improper public dissemination of classified material. The same legislative history that Wyatt cites liberally, but selectively, provides a clear description of Congress' reasons for adopting CIPA. As noted by the relevant Senate Report, "[t]he Government's understandable reluctance to compromise national security information invites defendants and their counsel to press for the release of sensitive classified information the threatened disclosure of which might force the government to drop the prosecution. 'Graymail' is the label that has been applied to describe this tactic." (S. Rep. No. 96-823 at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294) . This Report states further that "[t]his bill attempts to deal with the 'Graymail' problem by requiring a defendant who reasonably expects to disclose or to cause a disclosure of classified information in connection with any trial or pretrial proceeding to notify the government prior to trial, when possible." (Id. at 4). Since CIPA's adoption, numerous courts have recognized that "the Act was a response to the problem of 'graymail' which arose in prosecuting espionage and criminal leak cases." *United States* v. *Bin Laden*, 2001 WL 66393, at *1 (S.D.N.Y. 2001), *citing* S. Rep. 96-823. The *Bin Laden* court further explained that a "defendant is said to 'graymail' the government when he threatens to disclose classified information during a trial and the government is forced to choose between tolerating such disclosure or dismissing the prosecution altogether." *id.*, *citing*, *United States* v. *Pappas*, 94 F.3d 795 (2d Cir. 1996); *United States* v. *Poindexter*, 725 F. Supp. 13, 31 (D.D.C. 1989).

-4-

By his objection to the Government's proposed protective order, Wyatt takes the inconsistent positions that he is willing to abide by a protective order that governs his use during court proceedings of classified information that he may have been obtained outside of discovery, (indeed, Wyatt's Section 5 Notice of Intent to Use Classified Information demonstrates his commitment to that representation)[2], but "strenuously" objects to any protective order that would prohibit him from publicly disclosing any classified information that he may have obtained independent of this proceeding. (Def. Br. at 4).  Such seeming willingness to abide by reasonable restrictions of use of classified information in court proceedings, while maintaining an adamant right to disseminate classified information publicly without basis, causes the Government concern that Wyatt wishes to maintain access to a "graymail" card, by keeping at his disposal what he believes to be classified information and asserting his perceived right to publicly disclose that information. This Court should reject such efforts to preserve graymail tactics.

Wyatt attempts to confine the discussion of the propriety of protective orders that limit the disclosure of classified information to the strict language of Section 3 of CIPA, the legislative history that discusses the fact that CIPA protective orders are addressed only to

---

[2]Wyatt takes issue with the Government's citation to his filing of a Section 5 Notice of Intent to Use Classified Information in the Government's original motion in support of its application for a protective order. (Def. Br. at 3, n. 1).  As the Court is aware, the fact that a CIPA filing has been made, as opposed to the content of that filing and any subsequent argument surrounding that filing, is not something that should remain sealed and hidden from the public record.  Rather, as this Court has recognized with respect to previous CIPA filings of the Government and CIPA rulings by this Court, the provisions of CIPA require that a record of any CIPA proceedings be made and that a notice of such CIPA matters be recorded on the public record.  Making a record of CIPA filings to preserve appellate review of those proceedings in mandated by the language of Section 6.  Since a Section 5 Notice serves merely as a trigger for the Court to schedule a Section 6 hearing, any notion that the fact of a Section 5 Notice should remain hidden from the public record would be disingenuous.

material disclosed during the pendency of the litigation, and the language in *Pappas* that

overturned a protective order issued pursuant to CIPA that limited a defendant's ability to disclose

classified information obtained outside of the case both within court proceeding and to the public

generally. (Def. Br. at 5-6). As recognized by each of these sources of authority, however, the

Court's power to issue protective orders to prevent unnecessary disclosure of classified, or simply

non-public, information through extrajudicial statements is not limited to CIPA.

Nothing in the language of CIPA limits the Court's authority to exercise its

supervisory powers to ensure the orderly administration of justice in cases being litigated before

the Court. Federal Rule of Criminal Procedure 57 states that "a judge may regulate practice in any

manner consistent with federal law, these rules and the local rules of the district." Local Criminal

Rule 23.1 restricts the release of non-public information during criminal litigations in the

Southern District of New York. Pursuant to Rule 23.1(a), lawyers, employees of lawyers, and

government agents and officers are directed,

> not to release or authorize the release of non-public information or
> opinion which a reasonable person would expect to be disseminated
> by means of public communication in connection with pending or
> imminent criminal litigation with which they are associated, if there
> is a substantial likelihood that such dissemination will interfere with
> a fair trial or otherwise prejudice the due administration of justice.

The Court's authority to enforce these provisions are found in Local Criminal Rule 23.1(h), which

states in pertinent part that,

> [t]he court, on motion of either party or on its own motion, may
> issue a special order governing such matters as extrajudicial
> statements by parties and witnesses likely to interfere with the rights
> of the accused to a fair trial by an impartial jury . . . and any other
> matters which the court may deem appropriate for inclusion in such
> an order. In determining whether to impose such a special order,

the court shall consider whether such an order will be necessary to
ensure an impartial jury and must find that other, less extreme
available remedies, singly or collectively, are not feasible or would
not effectively mitigate the pretrial publicity and bring about a fair
trial.

Numerous courts in this district have invoked their supervisory powers to issue

orders preventing parties to a litigation from making extrajudicial statements concerning non-

public aspects of pending or imminent criminal litigation. One of the main justifications for such

restraints on litigants' abilities to make extrajudicial statements regarding non-public aspects of a

particular case is the need to guard against an improper taint -- either intended or unintended -- on

a potential jury pool. Most recently, in the case of *United States v. John A. Gotti*, 04 Cr. 690

(SAS), Judge Scheindlin issued a series of increasingly restrictive protective orders that precluded

virtually any individual who was associated with the case, past or present, from making

extrajudicial statements regarding non-public aspects of the case. Judge Scheindlin's written

order stated that "until the final verdict is rendered in this case, *all* past and present participants in

this case, including attorneys, parties, and potential witnesses, and past and present employees of

federal, state, and local law enforcement agencies, are prohibited from making or authorizing

extrajudicial statements or giving extrajudicial interviews concerning this case to any public

communications media that could interfere with a fair trial or prejudice any defendant, the

Government, or the administration of justice." (June 30, 2006 Written Order at 2, attached hereto

as Exhibit A) (emphasis in original). At the time of issuing this Order, Judge Scheindlin found

that there was a "substantial likelihood that the jury pool will be prejudiced by continued

extrajudicial comments, such as those in recent media reports." *Id.* at 1. The Court further found

that "entering a protective order restricting extrajudicial comments is the least restrictive means of

ensuring a fair trial for the benefit of the defendant, the Government and the public." *Id.* at 1-2.

Certainly, as the trial in the case approaches, similar concerns about intentional or unintentional public statements involving disclosure of classified information that could tend to influence a jury pool must be taken into consideration. As stated above, Wyatt does not object to following CIPA in order to attempt to utilize classified information during court proceedings in this case. His only objection to this portion of the protective order is the provision that seeks to restrict disclosure of the classified information in the public forum. Since Wyatt has not proffered a reason why such public disclosure of classified information would be necessary, and therefore justify his need to object to the restriction of such disclosure in the proposed protective order, the Government is left with real concerns that such public disclosures of classified information could improperly influence the prospective jury pool, or could be kept in reserve for potential graymail tactics against the Government. The Government submits that its interest in protecting against the unnecessary disclosure of classified information that could damage the national security outweighs the need for Wyatt to exercise any free speech rights by disclosing previously undisclosed classified information. The Court should not countenance such possible conduct by Wyatt, but rather should restrict the public disclosure of any classified information in Wyatt's possession based upon its own supervisory powers over matters pending before the Court, as is specifically authorized in Rule 57 and Local Criminal Rule 23.1(h).

The legislative history of CIPA is clear that its provisions restricting disclosure of classified information are limited to materials that were produced to the defendant during the course of the litigation. The Senate Report states that "[a]n order protecting materials given defendant under Rule 16 (or 'Brady') materials can forbid disclosure by a defendant or an attorney

in any context." S. Rep. No. 96-823 at 6.  However, "[i]f the defendant already had classified

materials in his possession, such a protective order can prevent disclosure in connection with the

trial but it cannot be expected to reach disclosure outside the trials." *Id.*  The report clarifies that

with respect to a defendant's disclosure to the public of classified information that was in the

defendant's possession prior to a litigation, "federal criminal statutes apply to such disclosures."

*Id.*  Therefore, the Senate Report recognizes that a defendant who already was in possession of

classified information prior to a court proceeding and who chooses to disclose such information

publicly, does so at his own peril, and could be subject to additional criminal charges if such

disclosure is made.  To the extent that Wyatt does possess classified information that he knew to

be classified prior to the initiation of this criminal case, any public disclosure of such information

could subject Wyatt to additional criminal charges for such disclosure.  Moreover, consistent with

the statutory language, nothing in the legislative history hints at the notion that CIPA limits the

Court from exercising its usual authority to ensure that cases litigated before it comport with usual

notions of fair administration of justice.

Finally, in *United States v. Pappas*, the Second Circuit held that "[t]hough the

prohibition of public disclosure of previously acquired information may not be supported by

CIPA, it may nonetheless be supported under ordinary principles of contract law." *Pappas*, 94

F.3d 795, 801 (2d Cir. 1996).  The Government asserts that to the extent that Wyatt is in

possession of classified information, such information was provided by the Government to Wyatt

in the course of a confidential relationship with the understanding by Wyatt and the Government

that the information was provided to Wyatt on a confidential basis.[3]  In agreeing to accept this information, Wyatt entered into an oral contract with the Government to maintain the confidentiality of this information and public disclosure of this information would be considered a breach of that contract by the Government. The Government asserts that short of a finding of entry of an oral contract, the Government would have a viable promissory estoppel claim against Wyatt, which under New York law, has three elements, namely, "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance. " *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2d Cir.1986).   Certainly, to the extent that Wyatt received classified information as a result of entering into a confidential relationship with the Government, the Government relied upon the promise of the parties to keep that relationship and the information provided confidential.  The Government could suffer damage to national security if such classified information is publicly disclosed as a result of a breach of that promise by Wyatt.  The *Pappas* court recognized that the "Government is entitled to enforce its agreements to maintain the confidentiality of classified information."  *Id.* at 801-02, *citing*, *United States v. Snepp*, 444 U.S. 507, 510-16 (1980); *United States v. Marchetti*, 466 F.2d 1309, 1316-17 (4th Cir.), *cert. denied*, 409 U.S. 1063 (1972).  The *Pappas* court held that the district court had

---

[3]Because this filing is made publicly, the Government is constrained from detailing its arguments in support of its position that Wyatt entered into an oral contract with the Government to maintain the confidentiality of any classified information that came into his position.  The Government intends to respond to Wyatt's Section 5 Notice of Intent to Use Classified Information in an *in camera* CIPA filing and during the course of a Section 6 hearing during which the use of classified information will be litigated.  At that time, the Government will provide details supporting its oral contract arguments and why publicly disclosing this classified information would be damaging to national security.  The Government hereby moves for such a Section 6 hearing, at a date and time that is convenient with the Court.

not scrutinized the contractual agreement between Pappas and the Government and therefore remanded for the district court to inquire about that contract. The Pappas case ultimately resulted in a guilty plea being entered by the defendant.

The Government's assertion of the existence of a contract, or at least a binding promissory estoppel obligation, between Wyatt and the Government regarding classified information is supported by Wyatt's course of performance since coming into possession of the information. Nowhere in his papers does Wyatt attempt to argue that a protective order precluding public disclosure would be moot since he has already disclosed the information publicly. The Government is not aware of any instance when Wyatt has disclosed classified information. Indeed, in arguing another point in his brief, Wyatt proclaims, "if Wyatt in fact had prior access to classified information and did not disclose it he is akin to individuals who previously had security clearances." (Def. Br. at 10). As cleared counsel is aware, obtaining a security clearance includes being contractually bound to maintain the confidentiality and classified nature of any classified information to which you are given access. Wyatt's conduct strongly supports the Government's position that to the extent that Wyatt came into possession of classified information outside of the discovery process in this case, he understood the confidential nature of that information and that he was obligated not to disclose that information publicly.[4]  Wyatt's February 2, 2007 Section 5

---

[4]Even if Wyatt argued that he already had disclosed the classified information and, therefore, there was no basis for the Government to seek to preclude him from disclosing it, that argument should be rejected consistent with the holding in *Pappas*. While the defendant in *Pappas* acknowledged the existence of some contractual agreement with the Government to maintain the confidentiality of classified information that came into his possession, he argued that his previous disclosure of the information to reporters during the course of interviews he gave at the Metropolitan Correctional Center put the information into the public domain, and any subsequent effort by the Court to limit such disclosure would be unavailing. The *Pappas* court rejected that argument, since it was the defendant himself who had made the prior, possibly

-11-

Notice also supports the Government's position that Wyatt understood that the information that came into his possession was classified and should be handled as such, thereby requiring invocation of Section 5 to litigate the use of such information. If Wyatt did not believe that such information was classified, there would be no need for him to file a Section 5 Notice. For these reasons, the Government submits that Wyatt understood that to the extent that he came into possession of classified information outside of the proceedings in this case, he understood that this information was classified and that it was provided to him pursuant to an oral contract with the Government to maintain the confidential nature of that information, or at the very least under circumstances supporting a promissory estoppel assertion by the Government. The Government therefore requests that the Court uphold the Government's contractual, or promissory estoppel, rights and preclude Wyatt from publicly disclosing any classified information.

Alternatively, if Wyatt asserts that he never entered into an agreement with the Government to maintain the confidentiality of the classified information that may have been provided to him outside of this litigation, then he is asserting that he never understood that such information was classified. If such is the case, then Wyatt did not become aware that the information that may be in his possession was classified until the discovery process in this case. Since that information was provided to Wyatt during the course of classified discovery, this Court can utilize the CIPA provisions to restrict disclosure of this information both during court proceedings, and to the general public. Under CIPA, "information conveyed by the Government

---

contractually-prohibited disclosure, and because "such self-help does not free him of contractual restraint in circumstances where risks to legitimate interests of the Government might arise from repeated disclosure or from the intended or even unintended amplification that is likely to accompany such disclosure." *Pappas, id.* at 803.

to the defendant in the course of pretrial discovery or the presentation of the Government's case

may be prohibited from disclosure, including public disclosure outside of the courtroom . . .".

*Pappas, id.* at 801. If Wyatt argues that there was no contract with the Government, or rejects the

Government's promissory estoppel assertion, then the Court should enter a protective order

restricting the public disclosure of this classified information both in court proceedings and to the

general public pursuant to Section 3 of CIPA.

        The Government respectfully submits that given the Government's interest in

preventing the unnecessary dissemination of classified information that could implicate national

security concerns, the Court should enter an order precluding defendant Wyatt from publicly

disclosing any classified information that came into his possession outside of this litigation

pursuant to either I) Rule 57, Local Rule 23.1 and/or this Court's inherent supervisory powers to

insure that cases pending before it proceed in a fashion that comports with the orderly

administration of justice, or ii) pursuant to Section 3 of CIPA, since Wyatt did not become aware

of the classified nature of this information until that was disclosed to him during the course of this

case.

### 2.    The Court Should Adopt a Protective Order that Precludes Disclosure of Classified Discovery to the Defendants Absent Consultation with the Government or Pursuant to a Court Order

        Next, Wyatt objects to the provisions contained in paragraph 18 of the proposed

protective order that preclude disclosure to the defendants, none of whom have security

clearances, of the classified information that is provided to cleared defense counsel during this

case and to which the defendants did not have previous access. (Def. Br. at 8). Paragraph 18

states that the defendants may be excluded from access to certain classified information, and that,

-13-

upon notice from the government that certain classified information may not be disclosed to the defendants, cleared defense counsel are precluded from making such disclosure absent the government's consent or approval by the Court.  Wyatt argues that adoption of such provisions go beyond the allowable restrictions under CIPA and would infringe on Wyatt's Sixth Amendment rights by either precluding him from assisting in the preparation of his defense or unfairly providing the Government with a "window into defense strategy by disclosing which documents [defense counsel] wishes to discuss" with Wyatt. (Id.).  Wyatt argues that, given his prior record of not disclosing any classified information that may be in his possession, he should be considered in the same vein as the defendants in CIPA cases who previously maintained security clearances and had regular access to classified information, like the defendants in *United States v. Libby*, 420 F. Supp. 2d 18, 20, n. 2 (D.D.C. 2006) and *United States v. Poindexter*, 727 F. Supp. 1470, 1481 (D.D.C. 1989) (Def. Br. at 10-11).  In each of these cases, the prosecution did not seek to preclude the defendants from having access to the classified information produced to cleared defense counsel during the prosecution since the defendants had prior access to the classified information at issue as a function of their prior government positions.

Despite Wyatt's efforts to analogize himself to the defendants in *Libby* and *Poindexter*, he is more akin to the defendants in *United States v. Bin Laden*, 2001 WL 66393, at *1 (S.D.N.Y. 2001), and *United States v. Moussaoui*, 2002 WL 1987964 (E.D.Va. Aug. 23, 2002) at *1, who did not have prior access to the classified information that was the subject of the prosecution.  These courts recognized that the cases before them were "[u]nlike the usual case involving classified discovery in which a defendant charged with espionage has previously possessed the classified information." *Id.*  Therefore, given the continued national security

-14-

concerns involved with disclosing classified information to these defendants, these courts upheld restrictions precluding these defendants from having access to the classified discovery provided to cleared defense counsel. As articulated in prior CIPA filings in this case, the same national security concerns persist in this case with disclosing to these defendants classified information. To this point in the litigation, the Government is not aware of any classified discovery that defense counsel have insisted are critical to the presentation of their defense and therefore must be shared with their clients. The protective order is drafted in such a way to allow defense counsel to consult with the Government attorneys in order to address any instances where defense counsel determine that they must share classified discovery with their clients. If such circumstances arise, Government counsel can consult with the classifying agency to determine whether the material can be declassified and shown to the defendants. Defense counsel are also permitted to discuss classified discovery with their clients in a sufficiently general way so that they can convey to their clients the nature of the material and receive input from their clients as to whether such material should be pursued further as a material part of the defense. To this point in this litigation, except for the material that was the subject of Wyatt's Section 5 Notice, the Government is not aware of any classified discovery that has been deemed material by any of the defendants.

Wyatt's concern about the possible unfair window into defense strategy that the proposed provisions of the protective order would convey to the Government is overstated and unfounded. As Wyatt is fully aware, Section 5 of CIPA specifically requires that defendants provide notice to the Government of their intent to use any classified discovery. Expecting defense counsel to inform the Government of its need to discuss specific items of discovery with their client to determine whether they would pursue its use at trial seems a logical first step in that

-15-

process that could result in the Government's consultation with the classifying agency to determine whether the material could be declassified or otherwise modified to allow for its disclosure to the defendant or its use at trial.

Moreover, claims similar to Wyatt's that such an order would prejudice him since it would chill his ability to consult with his counsel about classified discovery were considered and rejected by the Judge Sand in *Bin Laden*. In *Bin Laden*, Judge Sand recognized that in cases involving classified information, the "Court must weigh the interest of the Government in non-disclosure against this presumption" that a defendant is permitted to review items produced in discovery. *Bin Laden*, 2001 WL 66393 at *4. Judge Sand found that in cases involving classified information, "courts have given similar government interests significant weight in the balancing process," of determining whether to limit defense counsel's ability to share classified discovery with the defendants. *Id., citing, United States* v. *Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985)(explaining that the government has a "substantial interest in protecting sensitive sources and methods of gathering information"); *United States v. Rezaq*, 156 F.R.D. 514, 525 (D.D.C. 1994), *vacated on other grounds*, 899 F. Supp. 697 (D.D.C. 1995)(finding that "the need to protect sensitive information clearly outweighs defendant's need to know all of that information personally when his knowledge of it will not contribute to his effective defense"); and *United States v. Yunis*, 867 F.2d 617, 623 (D.D.C. 1989)(holding government's interest in protecting details about means of intercepting communications outweighed defendant's right to disclosure).

Judge Sand held that the defense counsel claims that "their task in discerning the relevance and materiality of the classified information is made more difficult by their inability to confer with the Defendant," were not sufficiently specific to justify disclosing classified discovery

to the defendant. *Id.* Judge Sand concluded that

> given the Government's compelling interest in restricting the flow
> of classified information and in light of the weight of precedent
> endorsing similar restrictions, the Court rejects Defendant's claim
> of unconstitutional deprivation of counsel. While the Defendant
> suggests that disclosure might enable him to assist counsel in
> making decisions about his representation, this hypothetical benefit
> is insufficient to warrant a finding that application of CIPA in this
> case is unconstitutional.

*Id.* While other parts of Judge Sand's opinion discuss the relevance of ongoing terrorism

investigations as part of the Government's need in that case to limit dissemination of classified

information, what is notable about Judge Sand's opinion on the specific point regarding the effect

on the defendant's Sixth Amendment rights resulting from imposing a restriction on disclosure of

classified discovery to the defendant is that there is no mention of the specific terrorism-related

charges that were pending against the defendant as being a critical component of the Court's

analysis. *Id.* at *2-*5.    Rather, the Court based its ruling on the ongoing governmental interests

in "restricting the flow of classified information," *id.* at * 4, to individuals to whom such

disclosure was necessary to effectively represent the defendant, namely defense counsel. The

Court in *Moussaoui*, while relying more heavily on the ardent terrorist allegiances of the

defendant to find that national security could be threatened by the disclosure of classified

information to him, also held that the Government interest in protecting its "national security

information outweigh[ed] the defendant's desire to review the classified information." *United

States v. Moussaoui*, 2002 WL 1987964 at * 1.

Defendant Wyatt, like the defendants in *Bin Laden* and *Moussaoui*, did not possess

a security clearance that afforded him access to the classified material that is now the subject of

-17-

his objections to this portion of the proposed protective order governing the handling of classified discovery. The Government has a continuing interest is limiting the dissemination of classified information to those individuals who have a need to know such information in order to effectively represent the defendants in this case. The Government submits that after carefully balancing the national security interests of the Government in limiting the unnecessary dissemination of classified information with Wyatt's speculative claims of prejudice that would ensue if he is precluded from reviewing classified discovery with his counsel, this Court should find that the Government's interest outweighs Wyatt's need to be given access to that classified information. The Court should therefore enter the proposed protective order.

### 3. Wyatt's Objections to the Language of the Additional Provisions of the Protective Order are Unfounded and Easily Addressed

Finally, Wyatt asserts a catchall objection to the proposed protective order, which he claims is replete with language that is so vague, ambiguous and overbroad, as to leave Wyatt confounded as to how he should conduct himself in order to ensure conformity with its provisions. (Def. Br. at 11). There is no question that the overall instruction of the proposed protective order is that when the defendants have any doubt about whether any of their filings implicate classified information, they must inquire of the appropriate Court-appointed officer or the Court to obtain guidance as to the manner in which the filing should be made. Pursuant to the terms of the proposed protective order, such questions about the classified nature of a filing can be addressed with the Court Security Officer with whom defense counsel already have interacted in the course of their obtaining access to the classified discovery and in the course of appropriately making Wyattt's Section 5 Notice.

-18-

An example of Wyatt's exaggeration of the potential perils of the allegedly ambiguous language of the proposed protective order is his selective description of the language in Paragraph 13 of the order which states that "[a]ny pleading or document filed by the defendant which may deal in any way, no matter how obliquely, with classified information, shall be filed under seal with the Court through the Court Security Officer." (Protective Order ¶ 13; Def. Br. at 12). Wyatt claims that through this proposed language, the Government "leaves the determination of what document may deal 'in any way, no matter how obliquely with classified information' wholly in the hands of defendant to figure out," and that the defendant proceeds at his unguided peril facing contempt or criminal prosecution for any misstep. (Def. Br. at 12). The language of the proposed protective order, however, directly contradicts Wyatt's argument.

The language immediately following Wyatt's selective quote in paragraph 13 of the protective order should assuage any of Wyatt's concerns that he may inadvertently cross the bounds of allowable conduct by making a public filing that unknowingly includes classified information. As articulated in the proposed protective order, the easiest manner in which to avoid such confusion is to simply file the pleading under seal with the Court Security Officer who will then abide by the terms of the protective order to determine whether the pleading in fact contains classified information and therefore must remain under seal. To make this determination, the Court Security Officer must consult with the appropriate agencies to determine whether any portion of the filing is indeed classified. Only after such consultation is made and a determination that no classified information exists in the filing is the Court Security Officer authorized to unseal the filing and place the pleading in the public record. Rather than place ambiguous obligations upon Wyatt, these procedures function to remove any doubt about the manner in which to

-19-

proceed.  If Wyatt has any doubt about whether any filing contains any classified information, he is required to submit the filing under seal to the Court Security Officer, who is obligated under the protective order to do the rest.  Wyatt's other examples of vague and unclear language are similarly unavailing.

### Conclusion

For all the foregoing reasons, this Court should enter the proposed protective order that was submitted by the Government on February 5, 2007, so that the parties can appropriately litigate any issues that may arise with respect to classified information.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:  _Edward O'Callaghan_

Edward O'Callaghan/Stephen Miller/
Michael Farbiarz
Assistant United States Attorneys
(212) 637-2634/2210/1587

Dated:  February 22, 2007
New York, New York

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                        :
**UNITED STATES OF AMERICA**                            :
                                                        :
        - against -                                     :        **ORDER**
                                                        :
**JOHN A. GOTTI,**                                      :        **04 Cr. 690 (SAS)**
                                                        :
        **Defendant.**                                  :
                                                        :
-------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  6-30-05
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

          The parties have moved for a protective order restricting extrajudicial

comments about the pending case against John A. Gotti.  The prosecution of Gotti

has attracted a good deal of media attention.  The Court recognizes that it has "an

affirmative constitutional duty to minimize the effects of prejudicial pretrial

publicity."[1]  After submissions by the parties and a hearing, I now find that there is

a substantial likelihood that the jury pool will be prejudiced by continued

extrajudicial comments, such as those in recent media reports.  The Court further

finds that entering a protective order restricting extrajudicial comments is the least

---

          [1]     *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979).  *See also*
*KPNX Broad. Co. v. Arizona Super. Ct.*, 459 U.S. 1302, 1306 (1982) (Rehnquist,
Circuit Justice) ("So far as communication between the trial participants and the
press during actual sessions of the court in the courtroom and its immediate
environs, I do not have the slightest doubt that a trial judge may insist that the only
performance which goes on in the courtroom is the trial of the case at hand.").

restrictive means of ensuring a fair trial for the benefit of the defendant, the Government, and the public.[2]

Therefore, IT IS HEREBY ORDERED that until the final verdict is rendered in this case, *all* past and present participants in this case, including attorneys, parties, and potential witnesses, and past and present employees of federal, state, and local law enforcement agencies, are prohibited from making or authorizing extrajudicial statements or giving extrajudicial interviews concerning this case to any public communications media that could interfere with a fair trial or prejudice any defendant, the Government, or the administration of justice. Statements that are intended to influence public opinion regarding the merits of this case are specifically designated as statements that could interfere with a fair trial or prejudice a party.

Nothing in this Order shall prohibit the parties from discussing, without elaboration or any kind of characterization whatsoever: (1) the general nature of any allegations or defenses; (2) information contained in the public

---

[2]     This Court previously entered a protective order restricting extrajudicial comments on August 8, 2005 and February 3, 2006, prior to Gotti's first and second trials. Those orders were limited to current trial participants and were effective only after a jury had been empaneled. The expanded scope of this order is warranted due to the increased volume and inflammatory nature of recent media coverage of this case, which presents a risk of irreparable pollution of the jury pool.

record; (3) scheduling information; (4) any decision or order by the Court that is a matter of public record; (5) the contents or substance of any motion filed in this case, to the extent that the motion is a matter of public record.

Furthermore, for the reasons stated in this Court's Opinion and Order dated December 3, 2004, nothing in this Order shall prohibit Curtis Sliwa from making any statement about this case on his own radio show, "Curtis and Kuby in the Morning."

The following definitions shall apply to this Order:

(a) "Public communications media" shall include, but not be limited to, print, television, radio, and internet media.

(b) "Extrajudicial" means not forming a valid part of open legal proceedings in this case.

(c) "Statement" means any written or oral statement, observation, remark, interpretation, or explanation expressing an opinion, attitude, or judgment.

The parties are directed to make reasonable efforts to inform all persons covered by this Order, as described above.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             June 30, 2006

-4-